## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BRUCE PORCELL, an individual, on behalf
of himself and all others similarly situated,

Plaintiff

v.

LINCOLN WOOD PRODUCTS, INC. and
DOES 1 through 10, inclusive,

Case No.  CIV-08-0617 MCA/LFG

Assigned to the Honorable M. Christina
Armijo

Discovery Magistrate: Honorable Lorenzo F.
Garcia

### FIRST AMENDED COMPLAINT FOR:
### (1) BREACH OF EXPRESS WARRANTY and (2) UNFAIR AND DECEPTIVE
### BUSINESS PRACTICES

Plaintiff Bruce Porcell, on behalf of himself and all others similarly situated, files this

First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure

15(a) and the Court's August 26, 2008 Federal Rule of Civil Procedure 16 Scheduling Order, and

alleges as follows:

### NATURE OF THE CASE

1.      This is a class action on behalf of all persons, proprietorships, partnerships,

corporations, and other business and legal entities in New Mexico, Alaska, Arizona, California,

Colorado, Hawaii, Idaho, Oregon, Montana, Nevada, Utah, Washington, and Wyoming, whose

homes, condominiums, apartment complexes, commercial buildings, and/or other structures

contain windows, doors, and/or skylights manufactured by Defendant Lincoln Wood Products,

Inc. (hereinafter referred to as "Lincoln" or "Defendant"), that were modified by the installation

of breathing devices such as breather tubes or capillary tubes.  This case includes any and all

1

types of windows, doors, and skylights modified by the installation of breathing devices, including but not limited to those manufactured with a krypton, argon, or other insulation gas (or blend of gasses) by Defendant.

## PARTIES

2.     Plaintiff Bruce Porcell is a resident of the State of New Mexico, Bernalillo County.  Plaintiff has suffered damages as a result of Defendant's illegal and wrongful conduct described below.

3.     Lincoln is a Wisconsin corporation with its principal place of business located in Merrill, Wisconsin.  Plaintiff is informed and believes, and thereon alleges, that Lincoln is in the business of manufacturing and selling windows, doors, and skylights, and that in certain instances, Lincoln modifies these products with breathing devices such as breather tubes and capillary tubes.

## JURISDICTION AND VENUE

4.     Plaintiff originally filed this action in the Second Judicial District Court in the State of New Mexico, in the County of Bernalillo, on June 2, 2008.  On July 1, 2008, Defendant removed this action to this Court, alleging federal jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, §4(a), 119 Stat. 9 ("CAFA").  Because complete diversity exists between Plaintiff, a citizen of New Mexico, and Defendant, a citizen of Wisconsin for the purposes of removal, and because the amount in controversy exceeds CAFA's five million dollar threshold, this Court maintains subject matter jurisdiction over this matter.

5.      A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, and a substantial part of the property that is the subject of this action is also situated in this district.  Therefore, pursuant to 28 U.S.C. § 1391, venue is proper in this district.

6.      Furthermore, Plaintiff is informed and believes and based thereon alleges that Defendant has purposefully availed itself of the benefits and protections of the State of New Mexico and/or has had sufficient contacts with this State such that maintenance of the action in this locale would be consistent with traditional notions of fair play and substantial justice.

## REPRESENTATIVE PLAINTIFF'S PURCHASES

7.      In or about December 1998, Representative Plaintiff Bruce Porcell purchased numerous windows and other glass products manufactured by Lincoln for his custom home in Cedar Crest, New Mexico ("the 1998 Windows").  Unbeknownst to Plaintiff, Plaintiff is informed and believes, and thereon alleges, that nearly all of the 1998 Windows were modified with breathing devices.

8.      Plaintiff is informed and believes and thereon alleges that the breathing devices in his Lincoln products allowed moisture, film, and/or dust to get in between the glass lites, thereby impairing visibility through the windows and decreasing the life expectancy of the product.

9.      In or about July 2000, Mr. Porcell contacted Desert Ways, Inc. ("Desert Ways"), a New Mexico distributor of Lincoln products, and informed them that several of the 1998 Windows had become foggy and difficult to see through.  Desert Ways determined that the 1998

3

Windows had experienced seal failure and agreed to replace the 1998 Windows and provide Mr. Porcell with new Lincoln replacement products pursuant to Mr. Porcell's warranty.

10.     In or about August 2000, Mr. Porcell was provided with Lincoln warranty replacement products (the "2000 Windows").  While the costs of the 2000 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the 2000 Windows were modified with breathing devices.

11.     In or about October 2001, Mr. Porcell contacted All-Pro Glass & Screen Inc. ("All-Pro Glass"), a New Mexico distributor of Lincoln products, and informed them that several of the 1998 Windows had become foggy and difficult to see through.  All-Pro Glass determined that the 1998 Windows had experienced seal failure and agreed to replace the windows and provide Mr. Porcell with new Lincoln products pursuant to Mr. Porcell's warranty.

12.     On or about November 5, 2001, Mr. Porcell was provided with Lincoln warranty replacement windows (the "2001 Windows").  While the costs of the 2001 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the 2001 Windows were modified with breathing devices.

13.     In or about January 2002, Mr. Porcell contacted All-Pro Glass, and informed them that one of the 1998 Windows had again become foggy and difficult to see through.  All-Pro

Glass determined that the window had experienced seal failure and agreed to replace the window and provide Mr. Porcell with a new Lincoln window pursuant to Mr. Porcell's warranty.

14.     On or about January 25, 2002, Mr. Porcell was again provided with a Lincoln warranty replacement window (the "January 2002 Window").  While the cost of the January 2002 Window was covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the January 2002 Window was modified with a breathing device.

15.     In or about July 2002, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through.  All-Pro Glass determined that the 1998 Windows had experienced seal failure and agreed to replace the products and provide Mr. Porcell with new Lincoln products pursuant to Mr. Porcell's warranty.

16.     On or about July 26, 2002, Mr. Porcell was again provided with Lincoln warranty replacement windows (the "July 2002 Windows").  While the costs of the July 2002 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the July 2002 Windows were modified with breathing devices.

17.     In or about June 2003, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through.  All-Pro

5

Glass determined that the windows had experienced seal failure and agreed to replace the windows and provide Mr. Porcell with new Lincoln windows pursuant to Mr. Porcell's warranty.

18.     On or about June 13, 2003, Mr. Porcell was again provided with Lincoln warranty replacement windows (the "June 2003 Windows"). While the costs of the June 2003 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows. Plaintiff is informed and believes, and thereon alleges, that the June 2003 Windows were modified with breathing devices.

19.     In or about September 2003, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through. All-Pro Glass determined that the windows had experienced seal failure and agreed to replace the windows and provide Mr. Porcell with new Lincoln windows pursuant to Mr. Porcell's warranty.

20.     On or about September 26, 2003, Mr. Porcell was again provided with Lincoln warranty replacement windows (the "September 2003 Windows"). While the costs of the September 2003 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows. Plaintiff is informed and believes, and thereon alleges, that the September 2003 Windows were modified with breathing devices.

21.     In or about November 2003, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through.

6

All-Pro Glass determined that the windows had experienced seal failure and agreed to replace the windows and provide Mr. Porcell with new Lincoln windows pursuant to Mr. Porcell's warranty.

22.     On or about November 25, 2003 and January 20, 2004, Mr. Porcell was again provided with Lincoln warranty replacement windows (the "2003/2004 Windows"). While the costs of the 2003/2004 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows. Plaintiff is informed and believes, and thereon alleges, that the 2003/2004 Windows were modified with breathing devices.

23.     In or about August 2005, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through. All-Pro Glass determined that the windows had experienced seal failure and agreed to replace the windows and provide Mr. Porcell with new Lincoln windows pursuant to Mr. Porcell's warranty.

24.     On or about November 8 and 23, 2005, Mr. Porcell was again provided with Lincoln warranty replacement windows (the "2005 Windows"). While the costs of the 2005 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows. Plaintiff is informed and believes, and thereon alleges, that the 2005 Windows were modified with breathing devices.

25.     In or about January 2006, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows had again become foggy and difficult to see through. All-Pro

Glass determined that the products had experienced seal failure and agreed to replace the products and provide Mr. Porcell with new Lincoln products pursuant to Mr. Porcell's warranty.

26.    On or about February 8 and 17, 2006, Mr. Porcell was again provided with Lincoln replacement products (the "February 2006 Windows").  While the costs of the February 2006 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the February 2006 Windows were modified with breathing devices.

27.    In or about January, April, and May of 2007, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows and several of his previously replaced Lincoln warranty replacement products had again become foggy and difficult to see through. All-Pro Glass determined that the 1998 Windows and replacement products had experienced seal failure and agreed to replace the products and provide Mr. Porcell with new Lincoln products pursuant to Mr. Porcell's warranty.

28.    On or about February 8, 2007 and June 6, 2007, Mr. Porcell was again provided with Lincoln replacement products (the "2007 Windows").  While the costs of the 2007 Windows were covered by Mr. Porcell's warranty, Mr. Porcell was forced to pay for all costs associated with the removal of his defective windows and installation of these warranty windows.  Plaintiff is informed and believes, and thereon alleges, that the 2007 Windows were modified with breathing devices.

29.     In or about October and November of 2007, Mr. Porcell contacted All-Pro Glass, and informed them that several of the 1998 Windows and several of his previously replaced Lincoln warranty replacement products had again become foggy and difficult to see through. All-Pro Glass determined that the 1998 Windows and replacement products had experienced seal failure and agreed to replace the products and provide Mr. Porcell with new Lincoln products pursuant to Mr. Porcell's warranty.

30.     To date, Mr. Porcell has not received the replacement Lincoln products he requested and was promised by All-Pro Glass and Lincoln in October and November of 2007 pursuant to his warranty.

31.     Plaintiff is informed, believes, and thereon alleges that nearly all of the Lincoln products in his home have now been replaced due to moisture, film, or dust getting into the products and causing impaired visibility.  Several of his windows have been replaced more than once due to moisture, film, or dust getting into the products and causing impaired visibility.

32.     On multiple instances, upon his requesting replacement warranty products, Plaintiff was assured that although the 1998 Windows and replacement products had experienced seal failure, Lincoln had redesigned the products and fixed the problem, such that the new replacement products would not experience seal failure.

33.     Plaintiff is informed and believes, and thereon alleges, that the breathing devices in the warranty replacement products provided by Lincoln allowed moisture, film, and/or dust to get in between the glass lites, thereby impairing visibility through the windows, decreasing the

life expectancy of the product, and necessitating multiple replacements of the defective warranty

replacement products.

34.     Several of the Lincoln products in Plaintiff's home continue to experience

visibility problems due to moisture, film, and/or dust getting into the products, and therefore still

require replacing.

35.     Plaintiff is also informed, believes, and thereon alleges that at least one of the

Lincoln products in his home was manufactured with argon gas to add even more insulating

qualities, and that the breathing devices installed in his Lincoln product(s) with argon gas caused

the argon gas to leak out of the product(s), resulting in a loss of the insulating qualities of the

argon gas.

36.     All of Plaintiff's Lincoln windows contained Lincoln's "Lifetime Limited

Warranty - Insulated Glass", which provides in relevant part:

**LIFETIME LIMITED WARRANTY - INSULATED GLASS**

Lincoln Wood Products, Inc., extends a limited warranty on insulated glass for the
life of the product for seal failure causing impaired vision due to moisture, film or
dust between glass.

...

For seal failures, Lincoln will furnish replacement glass at no charge for a period
of ten (10) years from date of manufacture.  After 10 years Lincoln will furnish
replacement glass at 50% of the published list price at time of replacement.

## GENERAL ALLEGATIONS

37.     This case involves Plaintiff's and plaintiff class members' defective windows,

doors, and skylights.  As set forth herein, Defendant manufactures, advertises, markets,

distributes, and sells windows, doors, and skylights. The insulated units themselves are comprised of two or three glass lites, with the area between the glass lites secured by a hermetic seal. Defendant's defective windows are modified with breathing devices, including breather and/or capillary tubes. Due to the installation of these breathing devices, moisture, film, and/or dust gets in between the glass lites, thereby impairing visibility through the windows and decreasing the life expectancy of the product.

**Defendant's Representations and Warranties Regarding Product Quality and Reliance on Those Representations and Warranties**

38.     At the time Mr. Porcell evaluated his options for windows and doors for his custom-built house in approximately December 1998, he was very concerned with the longevity, quality level, and insulating abilities of the windows. One of the things he was particularly looking for in windows was good insulating ability, in order to conserve energy and keep his energy costs down. Mr. Porcell decided to have his contractor install Lincoln insulated glass windows and doors because of Lincoln's good reputation and, specifically, because of Lincoln's representations, through Lincoln distributors, to him regarding the superior quality level, including the longevity and insulating abilities, of its windows.

39.     During the several months leading up to Mr. Porcell's purchase of Lincoln windows, he reviewed Lincoln's product catalog and possibly other Lincoln brochures. Lincoln's marketing materials make certain representations about the quality of its products. For instance, Lincoln's product catalog stated:

11

a)       "They adapt to any architecture, providing operation and performance features that make them the first choice of many architects, builders and home owners."

b)       "The product line is independently tested and A.L.I. certified for construction and performance."

c)       "The most traditional of venting windows has been fine tuned in operation and performance.  Double Hung windows continue to be in high demand by specifiers and end users.  Lincoln double hung window performance is second to none."

40.       Additionally, Lincoln's product catalog listed as glazing options both "Insulated Sealed Glazing" and "Insulated Lo E Argon Warm Edge," and also listed performance data for both "Insulated" and "Low E-Argon" products.  In order to obtain the maximum insulating abilities for his windows, Plaintiff purchased both Insulated and Insulated Low E products from Lincoln.

41.       Mr. Porcell reasonably relied on these material representations, including Lincoln's Limited Warranty, in purchasing his Lincoln products.  Had Lincoln informed Mr. Porcell that the installation of breathing devices would breach the seal and result in moisture, film or dust getting into the windows, he would not have purchased the windows from Lincoln.

**Defendant's Knowledge of the Product Defects**

42.       Plaintiff is informed and believes, and thereon alleges, that Defendant primarily manufactures its insulated glass products in Merrill, Wisconsin, which has an elevation of approximately 1280 feet above sea level.

12

43.     Because insulated glass windows, of necessity, are sealed, such windows are subject to warping, cracking, distortion, and other damages if exposed to changes in barometric pressure that result from elevation gains or losses.  For example, any windows transported from Defendant's manufacturing plants over mountain ranges or to high elevations are likely to suffer some damage.

44.     In order to prevent warping, cracking, distortion, and other damages caused by changes in elevation of its windows, doors, and skylights, Plaintiff is informed and believes, and thereon alleges, that Defendant has relied on the practice of inserting stainless steel breathing devices between the glass lites of a significant number of its windows, so as to permit a free flow of air, thereby equalizing pressure within the previously hermetically sealed windows.

45.     Plaintiff is informed and believes, and thereon alleges, that, once installed, consumers would not have knowledge of the breathing devices, because such devices were customarily concealed by the window sash.

46.     Inert gasses, such as argon, krypton, or a blend thereof, are clear gasses that boost the thermal efficiency, or insulating qualities, of the product when it is sealed in between an insulated glass product.  However, because the use of breather tubes involves compromising the seal of an insulated glass product, it also allows any inert gas inside the product to leak out through the tube.  Therefore, a customer who purchases an insulated glass product with both inert gas and breather tubes will not receive any of the superior insulating qualities of inert gas due to the loss of gas through the breather tube.  To magnify the situation, a customer would have

absolutely no way of knowing that the gas has leaked out of his window, since such defects are not observable by the naked eye.

47.    Plaintiff is informed and believes, and thereon alleges, that unsuspecting Lincoln customers, relying on Lincoln's representation that the "Low E" option improved the windows' insulating qualities, would pay extra for the "Low E" glass option, but because of modification with breathing devices, inert gas would not be included and/or any inert gas would leak out, and the windows would not deliver the claimed energy-saving qualities of the inert gas.

48.    Industry literature refers to the use of breathing devices in sealed insulated glass windows as an "oxymoron" because they allow the gas to leak out, and also explains that breathing devices allow moisture to enter into insulated glass units at least four to six times faster than in sealed insulated glass units without breathing devices, thereby causing visibility problems and decreasing the life expectancy of the units.

49.    Defendant had superior knowledge that the use of breathing devices in insulated glass windows breached the windows' hermetic seal, thereby permitting moisture, film, or dust to enter into the windows.  However, Plaintiff is informed and believes, and thereon alleges, that despite its awareness that breathing devices would cause moisture, film, or dust to enter its windows and reduce their life expectancy, in an effort to remain competitive, Defendant nevertheless continued to manufacture, sell, and aggressively market insulated glass windows with breathing devices (and continues to do so to this day).

50.    Plaintiff is informed and believes, and thereon alleges, that Defendant did not advise consumers that their models had been modified by the installation of breathing devices

14

and were therefore no longer sealed, or that such devices allowed intrusion of moisture, film, or dust into the models and decreased the life expectancy of the models, despite the fact that such details are material to a consumer's purchase of Defendant's products.

51.     Plaintiff is informed and believes, and thereon alleges, that consumers rely on Defendant's continued representations and warranties that its products are of superior quality and without defects, despite its superior knowledge that breathing devices cause moisture to enter the product and decrease the life expectancy of the product.

52.     Defendant had superior knowledge that the use of breathing devices in insulated glass windows filled with inert gas necessarily causes any inert gas to leak out. Despite this knowledge, Defendant failed to clearly and conspicuously disclose to its consumers that the installation of breathing devices necessarily causes any inert gas to leak out and that the lack of inert gas necessarily results in less effective insulating qualities. Defendant also failed to clearly and conspicuously disclose to its consumers that inert gas is not an available option if a customer is receiving breathing devices. All of these details are material to a consumer's purchase of Defendant's products.

53.     Plaintiff is informed and believes, and thereon alleges, that a significant portion of Defendant's gas-insulated models are modified and their effectiveness compromised by the installation of breathing devices.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on behalf of himself and as a representative of the following multi-state class:

15

All persons, proprietorships, partnerships, corporations, and other business and legal entities in New Mexico, Alaska, Arizona, California, Colorado, Hawaii, Idaho, Oregon, Montana, Nevada, Utah, Washington, and Wyoming whose homes, condominiums, apartment complexes, commercial buildings, and/or other structures contain windows, doors, and/or skylights manufactured by Defendant, and that were modified by the installation of breathing devices such as breather tubes or capillary tubes.  This case includes any and all types of windows, doors, and skylights modified by the installation of breathing devices, including but not limited to those manufactured with a krypton, argon, or other insulation gas (or blend of gases) by Defendant.  Excluded from the class are Defendant, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of Defendant.

55.     This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, typicality, adequacy, and superiority requirements of Federal Rule of Civil Procedure 23(b)(3).

56.     The members of the class are so numerous that joinder of all members is impractical.  Plaintiff is informed and believes, and thereon alleges, that the class consists of at least thousands of persons.

57.     There are questions of law and fact common to the class, including, but not limited to:

a)     Whether Defendant installed breathing devices in insulated glass products;

b)     Whether Defendant clearly and conspicuously notified consumers that its products were not standard, but were modified by the installation of breathing devices;

c)     Whether Defendant's products, when modified with breathing devices, allowed moisture, film, and/or dust to enter the products;

16

d)      Whether Defendant's modification of its products with breathing devices decreased the lifetime of its products;

e)      Whether Defendant clearly and conspicuously notified consumers that inert gas was not available in its products modified with breathing devices;

f)      Whether Defendant allowed its consumers to purchase insulated glass products filled with inert gas and modified with breathing devices;

g)      Whether Defendant clearly and conspicuously notified consumers that inert gas would leak out of products modified with breathing devices, necessarily resulting in less energy saving qualities;

h)      Whether Defendant's inert-gas-filled models, modified with breathing devices, retained the inert gases for the period represented and warranted by the Defendant;

i)      Whether Defendant's representations with respect to its products modified with breathing devices constitute unfair or deceptive business practices;

j)      Whether the representative plaintiff and class members suffered damages as a result of Defendant's actions.

58.      The claims of the representative plaintiff are typical of the claims of the class. Plaintiff Bruce Porcell owns a home in New Mexico which contains the products at issue manufactured by Defendant, and suffered damages as a result.

59.      The representative plaintiff will fairly and adequately represent and protect the interests of the class.  He shares the same interests as all class members because his claims and

17

losses are typical of those of other class members. The representative plaintiff has retained competent class counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the class members.

60.     Questions of law and/or fact common to the class, identified above, predominate over any questions affecting only individual class members.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all class members is impracticable. Most losses are modest in relation to the expense and burden of individual prosecution of the litigation necessitated by Defendant's wrongful conduct. It would be virtually impossible for the class members to efficiently redress their wrongs individually. Even if all class members could afford such individual litigation themselves, the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments. Individualized litigation would also magnify the delay and expense to all parties and the court system presented by the issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economy of scale and expense.

62.     In addition, Defendant has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief concerning the class as a whole appropriate.

18

## FIRST CAUSE OF ACTION

## FOR BREACH OF EXPRESS WARRANTY

### (Plaintiff, on Behalf of Himself and All Class Members, Against All Defendants)

63.     Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

64.     All of Plaintiff's Lincoln windows contained Lincoln's "Lifetime Limited Warranty - Insulated Glass", which provides in relevant part:

**LIFETIME LIMITED WARRANTY - INSULATED GLASS**

Lincoln Wood Products, Inc., extends a limited warranty on insulated glass for the life of the product for seal failure causing impaired vision due to moisture, film or dust between glass.

...

For seal failures, Lincoln will furnish replacement glass at no charge for a period of ten (10) years from date of manufacture.  After 10 years Lincoln will furnish replacement glass at 50% of the published list price at time of replacement.

65.     As described herein, Defendant also made other representations, descriptions, and warranties that its insulated glass windows would conform to specific standards or qualities, including, without limitation:

a.     That Defendant's insulated glass windows were sealed windows that provided superior insulating qualities.

b.     That Defendant's insulated glass windows were of superior product quality and have excellent longevity.

19

      c.     That customers have the option of purchasing insulated glass products with argon for even greater energy efficiency.

66.     Plaintiff is informed and believes and based thereon alleges that all class members who purchased insulated glass windows received similar warranties and/or experienced similar representations and/or descriptions, upon which they relied and which thereupon became part of the basis of the bargain in purchasing the insulated glass windows.

67.     Defendant's modification of insulated glass products with breathing devices owned by the Plaintiff and class members breached the products' seals, and failed to provide the superior insulation, product quality, and longevity promised by Defendant, even in instances where Defendant has provided replacement products pursuant to its limited warranty.

68.     As a result of the failure of Defendant's insulated glass models to perform as warranted and/or Defendant's failure to provide non-defective replacement products pursuant to its express warranties, Plaintiff and class members have suffered damages.

69.     Defendant's actions, as set forth above, constitute breach of express warranties in violation of the laws of New Mexico, Alaska, Arizona, California, Colorado, Hawaii, Idaho, Oregon, Montana, Nevada, Utah, Washington, and Wyoming.

70.     Plaintiff and class members have been unable to obtain appropriate relief from Defendant in the form of replacement, repair, or restitution.  Because of the unique problem posed by the breathing devices breaching the insulated glass seal, replacement would not provide (and, with respect to Plaintiff, has not provided) adequate relief.

71.    Plaintiff alleges that notice of Defendant's breaches was provided to Defendants within a reasonable time after discovery of the breaches.  Specifically, Plaintiff provided notice of breach within a reasonable time after he discovered the breaches of warranty.

72.    As a proximate result of Defendant's actions, Plaintiff and members of the class are entitled to the amount of any pecuniary damages, together with costs, pursuant to the laws of New Mexico, Alaska, Arizona, California, Colorado, Hawaii, Idaho, Oregon, Montana, Nevada, Utah, Washington, and Wyoming.

## SECOND CAUSE OF ACTION

## FOR UNFAIR AND DECEPTIVE BUSINESS PRACTICES

**(Plaintiff, on Behalf of Himself and All Class Members, except**

**Montana Residents,[1] Against All Defendants)**

73.    Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

74.    Defendants' actions, as set forth above, constitute unfair and deceptive business practices under the common law and the laws of each included state, including, but not limited to: New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1 *et seq.*; Alaska Unfair Trade Practices and Consumer Protection Statute, Ak. Stat. Ann. §§ 45.50.471 *et seq.*; Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 *et seq.*; California Business and Professions Code §§

---

[1] Plaintiff recognizes that Montana's Deceptive Trade Practices Act does not provide for class actions.  *See* M.C.A. § 30-14-133(1).

17200, *et seq.*; Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-105 *et seq.*; Hawaii

Unfair Trade Practices Act, HRS §§ 480-2 *et seq.*; Idaho Consumer Protection Act, I.C. §§ 48-

603 *et seq.*; Oregon Unlawful Trade Practices Act, Ore. Rev. Stat. §§ 646.608 *et seq.*; Nevada

Deceptive Trade Practices Act, Nev. Rev. St. Ann. §§ 598.0923 *et seq.*; Utah Consumer Sales

Practices Act, U.C.A. 1953 §§ 13-11-4 *et seq.*; Washington Consumer Protection Act, Wash.

Rev. Code §§ 19.86.010, *et seq.*; and Wyoming Consumer Protection Act, Wy. Stat. Ann. §§ 40-

12-105 *et seq.*

75.     As alleged above, Defendant provided express warranties relating to the

description and qualities of its insulated glass products modified with breathing devices that were

false and misleading and which Defendant knew to be false and misleading.

76.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and

the members of the Class are entitled to restitution and injunctive relief, as well as compensatory

damages, statutory damages (including treble damages), punitive damages, attorneys' fees, and

any other damages allowed by law.

**WHEREFORE**, Plaintiff, on his own behalf and on behalf of the class, prays for

judgment against Defendant, as follows:

1.     On all causes of action, for an order certifying that this action may be maintained

as a class action against Defendant, appointing Plaintiff and his counsel to represent the class,

and directing that reasonable notice of this action be given by Defendant to the members of the

class;

2.      On all causes of action, for an award of damages, and all monetary relief authorized by law or referenced herein;

3.      On the second cause of action, for an award of restitution and injunctive relief, as well as compensatory damages, statutory damages (including treble damages), punitive damages, attorneys' fees, and any other damages allowed by law.

4.      On all causes of action, awarding Plaintiff and members of the class the costs of their suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5.      Such other and further relief as may be just and proper.

6.      Plaintiff hereby demands a trial by jury.

Dated: November 10, 2008                          Respectfully submitted,

Brian Strange

Brian R. Strange (Cal. Bar. No. 103252)
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel:  (310) 207-5055
Fax:  (310) 826-3210
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2008, I presented the foregoing to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the following parties or counsel as follows:

Gordon Davenport, III
gdavenport@foley.com
Matthew R. Lynch
mlynch@foley.com
Michael D. Leffel
mleffel@foley.com
Theresa A. Andre
tandre@foley.com
FOLEY AND LARDNER
Verex Plaza
150 East Gilman Street
Madison, WI 53703-1481
Tel:  (608) 257-5035

Terry Farmer
terry@moseslaw.com
Moses, Dunn, Farmer & Tuthill
PO Box 27047
Albuquerque, NM 87125-7047
Tel:  (505) 843-9440

Attorneys for Defendant Lincoln
Wood Products, Inc.

24

Karen S. Mendenhall
kmendenhall@eb-b.com
Eaves & Mendenhall, P.A.
6565 Americas Parkway, N.E., Suite 950
Albuquerque, New Mexico 87110
Tel:  (505) 888-4300

Attorneys for Plaintiff Bruce Porcell

By: _____
Brian R. Strange (Cal. Bar. No. 103252)
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel:  (310) 207-5055
Fax:  (310) 826-3210

Attorneys for Plaintiff